UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE PAVERS AND ROAD BUILDERS DISTRICT COUNCIL WELFARE, PENSION, ANNUITY AND APPRENTICESHIP, SKILL IMPROVEMENT AND SAFETY FUNDS and THE HIGHWAY, ROAD AND STREET CONSTRUCTION LABORERS LOCAL UNION 1010,<br><br>                                          Plaintiffs,<br><br>                    -against-<br><br>CHAMPION ELECTRICAL MECHANICAL BUILDER CORP., and ALLIED WORLD SPECIALTY INSURANCE COMPANY,<br><br>                                          Defendants. | 18 CV_____<br><br><br><br><br><br><br><br>**COMPLAINT** |

Plaintiffs, by their attorneys, Virginia & Ambinder, LLP, allege as follows:

## NATURE OF THE ACTION

1.      This is a civil action under sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132(a)(3) and 1145, and section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185, to collect delinquent employer contributions to a group of employee benefit plans.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1367 and 29 U.S.C. §§ 185 and 1132(e)(1).

3.      Venue is proper in this judicial district pursuant to 29 U.S.C. §§ 185(a) and 1132(e)(2).

## THE PARTIES

4.      Plaintiffs Trustees of the Pavers and Road Builders District Council Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Safety Funds (the "Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with section 302(c) of the LMRA, 29 U.S.C. § 186(c).  The Funds are employee benefit plans within the meaning of section 3(3) of ERISA, 29 U.S.C. § 1002(3), and are administered at 17-20 Whitestone Expressway, Suite 200, Whitestone, New York 11357.

5.      Plaintiff The Highway, Road and Street Construction Laborers Local Union 1010 (the "Union") is a labor organization within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185, and represents employees in an industry affecting commerce as defined in Section 502 of the LMRA, 29 U.S.C. § 142, and Section 3(4) of ERISA, 29 U.S.C. § 1002(4).  The Union maintains its principal place of business at 17-20 Whitestone Expressway, Suite 200, Whitestone, New York 11357.

6.      Upon information and belief, defendant Champion Electrical Mechanical Builder Corp. ("Champion") is a domestic business corporation incorporated under the laws of the State of New York, with its principal place of business at 74-16A Grand Avenue, Suite 38, Elmhurst, New York 11373, engaged in the construction business.

7.      Upon information and belief, defendant Allied World Specialty Insurance Company ("Allied") is a corporation organized under the laws of the State of Delaware, authorized to do business within the insurance industry in the State of New York, with a principal place of business at 30 South 7th Street, Suite 810, Philadelphia, PA 19106.

## FACTS

### The Collective Bargaining Agreement

8.      At relevant times herein, Champion was a party to, or manifested an intention to be bound by, a collective bargaining agreement (the "CBA") with the Union.

9.      The Union is a labor organization within the meaning of section 301 of the LMRA, 29 U.S.C. § 185, and represents employees in an industry affecting commerce as defined in section 502 of the LMRA, 29 U.S.C. §142.

10.      The CBA requires Champion to pay specified contributions to the Funds and related entities on behalf of which the Funds act as collection agents in connection with all work performed within the trade and geographical jurisdiction of the Union ("Covered Work").

11.      The CBA further requires that Champion make specified dues check-offs and other contributions to the Union for each hour of Covered Work performed by Champion's employees.

12.      Pursuant to the CBA, if an employer fails to pay contributions when due, the employer is liable to the Funds for interest on the amount of unpaid contributions at an annual rate of 10% and liquidated damages.

13.      Pursuant to the CBA, in the event the Funds are required to employ an attorney to collect the contributions due and owing, Champion is obligated to pay to the Funds its attorneys' fees.

14.      In addition, the CBA requires Champion to submit periodic reports to the Funds detailing the number of hours of Covered Work performed by each of its employees and to furnish its books and records when requested by the Funds for the purpose of conducting an audit to ensure compliance with required benefit fund contributions.

15.    The CBA provides, *inter alia*, "The Employer is bound by all of the terms and conditions of the Agreements and Declarations of Trust with respect to the Welfare Fund, Pension Fund, Training Fund and Annuity Fund, which Agreements and Declaration of Trusts are hereby made part of this Agreement and are incorporated herein" ("Trust Agreements").

16.    The Trust Agreements provide that in operating and administering the Funds, the Board of Trustees shall have the power to "establish the policy and rules pursuant to which this Agreement and Plan are to be operated and administered, including the rules relating to the collection of contributions and other payments."

17.    Pursuant to the Trust Agreements, the Trustees of the Funds have promulgated a Policy for Collection of Delinquent Fringe Benefit Contributions ("Collection Policy"). Accordingly, Champion is bound to the terms of the Collection Policy.

18.    Article II of the Collection Policy provides that if Champion fails to make contributions when due, Champion is liable to the Funds for interest on the amount of unpaid contributions at an annual rate of 10% and liquidated damages of 20% of the amount of the unpaid contributions.

19.    Section 301 of the LMRA, 29 U.S.C. § 185, authorizes this Court to enforce the CBA.  In addition, Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."  29 U.S.C. § 1145.

**Delinquent Contributions**

20.     The CBA requires Champion, *inter alia*, to report to the Funds the number of hours of Covered Work performed by each employee.

21.     Champion failed to report the number of hours of Covered Work performed by each employee and to submit contributions for Covered Work performed from March 2016 through November 2017.

22.     Champion has also failed to comply with the Funds request to perform an audit covering the period March 30, 2016 through the present.

23.     Champion entered into a contract with the New York City Department of Parks and Recreation ("NYC Parks") pursuant to which Champion was to perform construction work at the P.S. 125 Playground in Manhattan, New York (the "P.S. 125 Project").

24.     Upon information and belief, Champion failed to remit contributions to the Funds in an unknown amount for work performed on the P.S. 125 Project.

25.     Champion entered into a contract with NYC Parks pursuant to which Champion was to perform construction work at The Reconstruction of Comfort Stations and Facilities project located at Bayview Parks in Brooklyn, New York, Tremont Parks in Bronx, New York, and various parks in Manhattan, New York (the "Reconstruction Project").

26.     Upon information and belief, Champion failed to remit contributions to the Funds in an unknown amount for work performed on the Reconstruction Project.

27.     Pursuant to the CBA, the documents and instruments governing the Funds, and Section 502(g)(2) and 515 of ERISA, 29 U.S.C. §1132(g)(2) and 1145, and Section 301 of the LMRA, 29 U.S.C. § 185, the Funds are entitled to an order directing Champion to submit to an audit of its books and records covering the period March 30, 2016 through the present and

Champion is liable to the Funds for contributions in connection with all Covered Work performed by its employees from March 2016 through November 2017 in the an unknown amount, plus contributions revealed as due and owing pursuant to an audit covering March 30, 2016 through the present and contributions owed on the P.S. 125 Project and on the Reconstruction Project, interest on the unpaid contributions at an annual rate of ten percent (10%), liquidated damages of twenty percent (20%) of the principal amount of the delinquency, and all reasonable attorneys' fees, expenses, and costs incurred by Plaintiffs in prosecution this suit.

### FIRST CLAIM FOR RELIEF

28.     Plaintiffs repeat the allegations set forth in paragraphs 1 through 27 above and incorporate them herein by reference.

29.     Champion failed to submit remittance reports to the Funds for the period March 2016 through November 2017.

30.     Champion failed to remit contributions to the Funds in an unknown amount for work performed during March 2016 through November 2017 and dues check-offs and other contributions to the Union.

31.     Upon information and belief, Champion failed to remit contributions to the Funds in an unknown amount for work performed on the P.S. 125 Project.

32.     Upon information and belief, Champion failed to remit contributions to the Funds in an unknown amount for work performed on the Reconstruction Project.

33.     Accordingly, Champion owes an unknown amount of contributions to the Funds and dues check-offs and other contributions to the Union in connection with Covered Work performed by its employees for March 2016 through November 2017, plus contributions in an

unknown amount for Covered Work performed on the P.S. 125 Project and on the Reconstruction Project.

34.     Section 301 of the LMRA, 29 U.S.C. §185, authorizes this Court to enforce the CBA.

35.     Pursuant to section 301 of the LMRA, 29 U.S.C. § 185, the collective bargaining agreement and the documents and instruments governing the Funds, Champion is liable for contributions to the Funds in an unknown amount and dues check-offs and other contributions to the Union in connection with Covered Work performed by its employees during March 2016 through November 2017 and on the P.S. 125 Project and the Reconstruction Project, interest on the amount of unpaid fringe benefits at an annual rate of 10%, liquidated damages in the amount of 20% of the unpaid fringe benefits adjudged to be due and owing, and attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

36.     Plaintiffs repeat the allegations set forth in paragraphs 1 through 35 above and incorporate them herein by reference.

37.     Section 515 of ERISA requires employers to make contributions to a multiemployer plan under the terms of a collective bargaining agreement.  29 U.S.C. § 1145.

38.     Each of the Funds is a "multiemployer plan" as that term is used in Section 515 of ERISA.

39.     Champion is an "employer" as that term is used in Section 515 of ERISA.

40.     Upon information and belief, Champion has failed to pay contributions to the Funds in an unknown amount for work performed on the P.S. 125 Project in violation of Section 515 of ERISA.

41.    Upon information and belief, Champion has failed to pay contributions to the Funds in an unknown amount for work performed on the Reconstruction Project in violation of Section 515 of ERISA.

42.    Champion failed to remit contributions to the Funds for work performed March 2016 through November 2017 in an unknown amount in violation of Section 515 of ERISA.

43.    Section 502(g) of ERISA provides that upon a finding of an employer violation of Section 515 of ERISA, the Court shall award to the plaintiff the unpaid benefit contributions, interest on the unpaid contributions, liquidated damages, and attorneys' fees and costs and disbursements incurred in the action.

44.    Pursuant to section 502 and 515 of ERISA, 29 U.S.C. § 1132 and 1145, Champion is liable for contributions to the Funds in an unknown amount in connection with Covered Work performed by its employees during March 2016 through November 2017, and on the P.S. 125 Project and the Reconstruction Project, and for additional amounts to be determined by the Court for statutory damages, reasonable attorneys' fees, interest on the unpaid principal, and costs and disbursements incurred in this action.

## THIRD CLAIM FOR RELIEF

45.    Plaintiffs repeat the allegations set forth in paragraphs 1 through 44 above and incorporate them herein by reference.

46.    The CBA required Champion to specified hourly contributions to the Funds and the Union in connection with all Covered Work.

47.    The CBA requires Champion to furnish its books and records when requested by the Funds for the purpose of conducting an audit to ensure compliance with required benefit fund contributions.

48.     Pursuant to the CBA, section 301 of the LMRA, 29 U.S.C. § 185, sections 502 and 515 of ERISA, 29 U.S.C. §§1132 and 1145, and the documents and instruments governing the Funds, the Funds are entitled to an Order directing Champion to submit to an audit of its books and records covering the period March 30, 2016 through the present and ordering Champion to pay all delinquent contributions revealed by such audit, plus interest at the rate of 10% per annum, liquidated damages in the amount of 20% of the delinquent contributions, reasonable attorneys' fees, expenses, and costs, and other costs incurred in connection with the audit and collection procedures.

### FOURTH CLAIM FOR RELIEF

49.     Plaintiffs repeat the allegations set forth in paragraphs 1 through 48 above and incorporate them herein by reference.

50.     Defendant Allied issued Bond No. S001-2717 (the "P.S. 125 Bond") in connection with the agreement between NYC Parks and Champion pursuant to which Champion was to perform construction work at the P.S. 125 Project.

51.     By issuing the P.S. 125 Bond, Allied undertook to become liable for wages and benefits due in connection with labor performed on the P.S. 125 Project unless Champion promptly paid such compensation.

52.     Upon information and belief, Champion failed to remit contributions and dues-check offs and other contributions in an unknown amount for work performed on the P.S. 125 Project.

53.     Accordingly, pursuant to the terms of the P.S. 125 Bond, Defendant Allied is liable to Plaintiffs for delinquent fringe benefits owed by Champion in connection with work performed on the P.S. 125 Project in an amount to be determined at trial.

**FIFTH CLAIM FOR RELIEF**

54.     Plaintiffs repeat the allegations set forth in paragraphs 1 through 53 above and incorporate them herein by reference.

55.     Per New York State Labor Law § 220-g, claimants may file suit to recover on a payment bond within one year of the date of the last alleged underpayment.

56.     As supplemental benefit funds entitled to receive payments of supplemental benefits on behalf of Champion's employees, the Funds are entitled to recover any underpayments for work performed by said employees.

57.     Upon information and belief, Champion failed to ensure that supplemental benefits payments were made to the Funds for work performed by their employees on the P.S. 125 Project.

58.     Accordingly, pursuant to the terms of New York State Labor Law § 220-g, Allied is required to make payment to the Funds for work performed on the P.S. 125 Project in an amount to be determined at trial.

**SIXTH CLAIM FOR RELIEF**

59.     Plaintiffs repeat the allegations set forth in paragraphs 1 through 58 above and incorporate them herein by reference.

60.     Defendant Allied issued Bond No. S001-0349 (the "Reconstruction Bond") in connection with the agreement between the NYC Parks and Champion pursuant to which Champion was to perform construction work at the Reconstruction Project.

61.     By issuing the Reconstruction Bond, Allied undertook to become liable for wages and benefits due in connection with labor performed on the Reconstruction Project unless Champion promptly paid such compensation.

62.     Upon information and belief, Champion failed to remit contributions and dues-check offs and other contributions in an unknown amount for work performed on the Reconstruction Project.

63.     Accordingly, pursuant to the terms of the Reconstruction Bond, Defendant Allied is liable to Plaintiffs for delinquent fringe benefits owed by Champion in connection with work performed on the Reconstruction Project in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF

64.     Plaintiffs repeat the allegations set forth in paragraphs 1 through 63 above and incorporate them herein by reference.

65.     Per New York State Labor Law § 220-g, claimants may file suit to recover on a payment bond within one year of the date of the last alleged underpayment.

66.     As supplemental benefit funds entitled to receive payments of supplemental benefits on behalf of Champion's employees, the Funds are entitled to recover any underpayments for work performed by said employees.

67.     Upon information and belief, Champion failed to ensure that supplemental benefits payments were made to the Funds for work performed by their employees on the Reconstruction Project.

68.     Accordingly, pursuant to the terms of New York State Labor Law § 220-g, Allied is required to make payment to the Funds for work performed on the Reconstruction Project in an amount to be determined at trial.

**WHEREFORE**, plaintiffs respectfully request judgment:

(1)     on their First Claim for Relief against Champion for contributions to the Funds in an unknown amount and dues check-offs and other contributions to the Union in connection with

Covered Work performed during the period March 2016 through November 2017, and on the P.S. 125 Project and the Reconstruction Project, interest on the amount of unpaid fringe benefits at an annual rate of 10%, liquidated damages in the amount of 20% of the unpaid fringe benefits adjudged to be due and owing, and attorneys' fees and costs;

(2)    on their Second Claim for Relief against Champion for contributions to the Funds for an unknown amount and dues check-offs and other contributions to the Union in connection with Covered Work performed by its employees during the period March 2016 through November 2017, and on the P.S. 125 Project and the Reconstruction Project, and for additional amounts to be determined by the Court for statutory damages, reasonable attorneys' fees, interest on the unpaid principal, and costs and disbursements incurred in this action pursuant to 29 U.S.C. § 1132(g);

(3)    on their Third Claim for Relief against Defendant Champion an order directing Champion to submit to an audit of its books and records covering the period March 30, 2016 through the present and ordering Champion to pay all contributions revealed by such audit, plus interest, liquidated damages, attorneys' fees and costs;

(4)    on their Fourth Claim for Relief against Defendant Allied for delinquent fringe benefits in an amount to be determined at trial plus interest thereon from the date of the filing of this Complaint;

(5)    on their Fifth Claim for Relief against Defendant Allied for delinquent fringe benefits in an amount to be determined at trial plus interest thereon from the date of the filing of this Complaint;

(6)     on their Sixth Claim for Relief against Defendant Allied for delinquent fringe benefits in an amount to be determined at trial plus interest thereon from the date of the filing of this Complaint;

(7)      on their Seventh Claim for Relief against Defendant Allied for delinquent fringe benefits in an amount to be determined at trial plus interest thereon from the date of the filing of this

(8)     granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
         January 31, 2018

                    VIRGINIA & AMBINDER, LLP

                    By:_____/s/Nicole Marimon_____
                        Charles R. Virginia
                        Nicole Marimon
                        40 Broad Street, 7th Floor
                        New York, New York 10004
                        (212) 943-9080
                        Attorneys for Plaintiffs